## BUSSEY *vs.* GILMORE.

The power given to towns by statute to raise money for "necessary charges," extends only to those expenses which are incident to the discharge of *corporate duties.*

Hence a tax of money for the discharge of a contract entered into by a town with the corporation of a toll bridge, for the free passage of the bridge by the citizens of the town, was held illegal, as transcending its powers.

THIS was a writ of entry on the demandant's own seisin and a disseisin by the tenants, of lands in *Bangor* ; and it came before the Court upon a case stated by the parties, containing the following facts.

The *Bangor* bridge-company, incorporated in 1807, having erected a bridge across the *Kenduskeag* river in the town of *Bangor*, granted in 1808, to the resident inhabitants, taxed in the town, with their families, carriages, &c. the right to pass the bridge, free of toll, for the term of twenty years ; and covenanted to surrender the bridge in good repair, at the end of that term, to the inhabitants of *Bangor*, to be their own property forever;— in consideration of which the inhabitants of the town, in their corporate capacity voted and covenanted to pay to the bridge-company a certain sum annually during the term of twenty years.

The sum thus agreed to be paid was annually raised by vote in town-meeting, and assessed in the town tax among the usual items of town charges, upon the property as well of non-resident as of resident owners of land ; and paid without objection till the year 1822.

The demandant who is a citizen of *Massachusetts*, had owned lands in *Bangor* more than ten years ; which had been taxed as other estates, and which taxes he had paid without objection. He had often in that period visited *Bangor*, and passed the bridge, paying toll as other strangers ; but not knowing the purposes for which the town tax was assessed, till the year above mentioned.

In the year 1822, the town tax was raised and assessed in the usual manner, including four hundred dollars raised by vote to pay the sum stipulated to be paid for that year to the bridge company. This tax the demandant refusing to pay, his lands were

sold under the provisions of the statute, and a deed made by the collector to the tenant, who was the purchaser at the collector's sale.

And the question was, whether the contract with the bridge company was within the legitimate powers of the town, and the tax therefore valid in law ?

*Greenleaf* and *Godfrey* for the demandant.

1. The contract to pay toll to the bridge company was not within the corporate powers of the town. It has no powers but such as are *expressly granted*, or are *necessarily incident* thereto. *The People v. The Utica Ins. Co.* 15 *Johns.* 358.

These powers are enumerated in *Stat.* 1785, *ch.* 75, *sec.* 7, and in *Stat.* 1821, *ch.* 114, *sec.* 6, and are—to raise money for the support of the ministry, the schools, the poor, " and other *neces-* " *sary* charges arising within the same town." Some other pecuniary duties are imposed by other statutes. These " necessary charges" are explained by *Parker C. J.* in *Stetson v. Kempton* 13 *Mass.* 278, to mean such sums as should be necessary to meet the ordinary expenses of the year, or which are the effect of the legal discharge of their *corporate* duty. Hence money raised for necessary defence in war was held an illegal assessment. Similar powers in parishes are limited to the defraying of expenses arising from the execution of the powers *previously enumerated.* *Dillingham v. Snow* 5 *Mass.* 553. *Bangs v. Snow* 1 *Mass.* 187. Accordingly it has been held that the commutation of the *labor-tax* on the highways, for a grant of money to be expended in repairing highways and rebuilding bridges was illegal, as transcending the legitimate powers of the town. *Libby v. Burnham* 15 *Mass.* 144.

Now no *corporate* duty is devolved on the town, to which the passage of a toll-bridge is *necessarily* incident; and therefore the contract is illegal.

2. But if a town might, under *any* circumstances, make a contract for the payment of toll, yet *this* contract is void, because it is unjust, partial, and oppressive.

By the act of incorporation, the farmers of *Bangor* are specially exempted from toll, when going to and from their farms. But if

the town as a corporation may assess upon all persons a tax to purchase a general exemption, then those who are already exempted by law, must pay their proportion to purchase the same immunity for others who are not.

So non-residents, who are taxed in their estates to purchase this immunity for the inhabitants of *Bangor*, can yet derive no benefit from it themselves, but are obliged to pay their toll, when visiting and managing the very estates thus taxed.

As to the clause in the act which authorizes the bridge-company to commute the toll with *any corporation*,—this gives no sanction to a contract with the town; but must reasonably be intended to mean those manufacturing corporations in *Bangor*, whose agents, in the transaction of the business of the corporation, necessarily must pass the bridge.

*Allen*, for the tenant.

The contract was within the legitimate powers of the town ; both under the general statute enumerating those powers, and also under the particular acts relating to the bridge in question.

1. As to the general statutory provisions. The *Stat.* 1786, *ch.* 75, authorizes towns to raise money for the purposes therein specified, and for " *other necessary charges*," &c. This term is to be received in a civil or political, and not in a strictly philosophical sense; and is in this place to be understood as equivalent to *expedient* or highly *useful*;—not as implying any thing which cannot, by any possibility, or under any circumstances, be dispensed with; but as indicating a case where the town, fairly calculating the advantages on the one hand, and weighing the burdens on the other, finds the former most decidedly to preponderate. A line must be drawn somewhere, within which the town may lawfully exercise its discretion as to what it may consider as necessary charges. This line must vary, as the subject matter of it applies to the various circumstances and situation of each town. But whatever is essentially important to the convenience of a large portion of citizens, and is open to the enjoyment of all, ought to be considered as within this general delegation of power. It is in this liberal manner that the term *necessaries* is used when

applied to a minor; and which is always understood to mean what-ever is suitable, and convenient, and adapted to his situation. In the like manner is the same term expounded, when applied to the nature and character of the relief afforded by a town to per-sons falling into distress as paupers.   But in the case of *Stetson v. Kempton* 13 *Mass.* 278, the Court, in express terms, adopt the broad rule of construction, saying that the erection of public buildings, town houses, and market houses, may be proper town charges, as coming fairly within the term " necessary charges," for they may be *essential to the comfort and convenience of the citizens.*   In the present case the town has determined that *some* method of crossing the navigable waters of the *Kenduskeag* was essential to the comfort and convenience of its citizens; and that a composition for the toll was less expensive than to maintain a public and free bridge.

2. The private statutes relating to this subject, recognise the same power.   By the act of *Feb.* 20, 1807, the *town* was author-ized to erect this bridge, and to reimburse the expense by a toll. The right thus granted could not be taken away but by their con-sent; and this was expressed in the act of *June* 1807, under which the bridge-corporation was empowered to erect it ; and by which the town contracted to part with its rights for a stipulated consideration.   At the end of twenty years the bridge was to become the property of the town; and as a compensation for its erection, as well as for the immunity of toll, an annual sum was to be paid to the corporation.   By the last act, the proprietors of the bridge are expressly authorized to commute the toll with any person or persons, or with any corporation.   There can be no doubt that the town was here intended, since its rights and con-venience so obviously form a part of the care of the legislature. This provision of the statute cannot be satisfied, but by extending the same power to " any corporation" to enter into such contract of commutation.   And so the parties understood its enactment, by forthwith carrying it into effect.   So far as resident citizens are concerned, no objection can be made to the tax; and non-residents, whose estates are enhanced in value by this very bridge, might with as much reason object to a tax for erecting a town-hall, or a market house.

Bussey *v.* Gilmore.

WESTON J. delivered the opinion of the Court, as follows.

The original title of the demandant to the premises demanded is admitted; he therefore must recover, unless the tenant has shewn a title in himself. The title he exhibits, arises from a collector's sale, for the nonpayment of taxes in the town of *Bangor*, for the year 1822. The only objection urged against the validity of this sale, arises from the assessment, as a part of the tax for the year in question, of the sum of four hundred dollars, stipulated to be paid by the town to the *Bangor Bridge Company*, for certain privileges and advantages, secured by contract from that company to the town of *Bangor*, and to the citizens thereof. The demandant contends that, in voting this sum, the town transcended the powers incident to it in its corporate capacity. And if such should appear to be the fact, the title of the tenant fails. The counsel for the tenant insists that the town has this authority, *first*, from the statute of 1785, *ch.* 75, *sec.* 7, the law in force at the time of the making of the contract before mentioned, and which has been re-enacted in our revised statutes. And, *secondly*, by the effect of the act of *February* 27, 1807, authorizing the town of *Bangor* to erect a bridge; and by the act of *June* 20, 1807, incorporating the existing company.

The construction of the statute of 1785, before referred to, in relation to the authority of towns to raise, assess and collect money, is so clearly stated and so fully illustrated, in the case of *Stetson v. Kempton et al.* cited in the argument of this cause, that we have little occasion to say more than that we are entirely satisfied with the principles of that case, and the deductions there drawn. The Court remark that " it is important that it should " be known that the power of the majority over the property, and " even the persons, of the minority, is limited by law to such cases, " as are clearly provided for and defined by the statute, which " describes the powers of these corporations." By that decision, this principle did become known; and believing that it is justified, as well from considerations of public policy, as from a sound construction of the law, we have no disposition to modify or change it, if we had the power to do so, which we clearly have not. It is conceded that the authority of the town to vote and assess the

sum in question, can be deduced only from the general terms used in the statute, which, after authorizing towns to raise money for certain specified objects, adds, " and other necessary charges." The generality of this phrase has received in the case before referred to, a reasonable limitation. Without enumerating the objects which this term, *other necessary charges*, may be understood to embrace, it may in general be considered as extending to such expenses as are clearly incident to the execution of the power granted, or which necessarily arise in the fulfilment of the duties imposed by law. It is not pretended that the contract made with the bridge-company, was necessary to the discharge of any corporate duty. Towns are not required, nor have they the power, to provide for the erection of bridges over tide or navigable waters. The powers granted to towns are specified and defined by statute; and we have discovered no one to which a charge of this sort can be considered as incident. Without adverting therefore to the various topics, by which the injustice of this assessment has been impeached on the one side, or its utility or convenience defended on the other, we are clearly of opinion that it is not supported by any general law in force at the time it was made, or when the contract was entered into, which it was designed to fulfil.

It remains to consider whether it is justified by the act of *February*, or of *June*, 1807, either by their express terms, or by fair implication. By the act of *February* the franchise was granted to the town ; and they were empowered to commute the toll with any person or persons, or with any corporation. And the same power of commutation is granted to the present company by the act of *June*. In both cases the persons or corporations, with whom a commutation might be made, must be understood to be such only as had a legal capacity to contract. The power conferred was upon the grantees of the franchise. Their competency to make the commutation was established and confirmed; but the competency of those, with whom such contracts might be made, was left to depend upon the general rules of law, unaffected by the provisions of these acts. Thus femes covert, minors, or other persons or corporations, who were before incompetent to enter into a contract of this description, must be considered

as still remaining under the same disability. The acts relied upon did not enlarge their capacity, or confer upon them any new powers.

But it is said that, by the term corporation, the town of *Bangor* must be considered as particularly embraced ; because such a contract would be more beneficial to them than to any other corporation, and that therefore authority was, by implication, conferred upon them thus to contract, if they did not possess it before. The privilege purchased by the contract, was valuable to many of the citizens, in their individual capacity ; but the town had no corporate interest to be promoted by the immunity. The interests of other corporations of the manufacturing kind, might be directly aided by such a contract ; which would enable them, at less expense, to transport their materials and goods across the bridge, and to provide for the unrestrained passage of such, as might be in their employment. The term in the first act, did not embrace the town ; for the bridge was to be their property. Nor can the term, in the second act, be considered as conferring on them any additional powers ; as it is fully satisfied by limiting it to other corporations, competent to contract. The interests of the citizens of *Bangor* are otherwise provided for, by the provision by which they are permitted to pass free of toll, to and from public worship ; and by that which authorizes such of them as are farmers to pass free, to and from their farms.

The portion of the tax of 1822 objected to, being unauthorized by law ; and the title of the tenant therefore failing ; by the agreement of the parties, he is to be defaulted, and judgment is to be rendered for the demandant.